NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

| | | |
|---|---|---|
| ANDREA YESSIAN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-5790 |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

_____

**PISANO, District Judge:**

Before the Court is the Appeal of Andrea Yessian ("Plaintiff") from the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her request for Disability Insurance Benefits ("DIB"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court finds that the record contains substantial evidence supporting the Administrative Law Judge's ("ALJ") decision and therefore, affirms the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Title II DIB on July 14, 2005, alleging disability due to depression and alcohol abuse as of February 9, 2003.  R. 385-87. The Social Security Administration denied her claims both initially and on reconsideration. Upon Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"). On July 17, 2007, the ALJ issued a written decision denying the Plaintiff's claim. On May 7, 2009, the Appeals Council denied

1

Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. Plaintiff subsequently brought a civil suit before this Court. On January 28, 2010, the Honorable Garrett E. Brown reversed the ALJ's decision and remanded the case to the Agency for further proceedings. On July 3, 2010, the Appeals Council, which had previously affirmed the ALJ's decision, found eight errors for the ALJ to correct. R. 461-63. On March 28, 2012, the same ALJ denied benefits once again because she found that Plaintiff's impairments were not so severe as to preclude all work activity during the period in question. R. 443-55. Again, the Appeals Council found no reason to disturb the ALJ's decision. Subsequently, Plaintiff appealed the decision to this Court.

## II. BACKGROUND

Plaintiff was born on August 5, 1964. R. 17. During the fifteen years prior to the alleged disability, Plaintiff obtained a college degree in recreational therapy and worked as a recreational therapist at a psychiatric facility in 1991. R. 19. Plaintiff then married and had three children while she was self-employed as a licensed childcare provider. *Id.* On February 11, 2003, Plaintiff was admitted to Somerset Medical Center for depression. *Id.* Plaintiff testified that she had become unable to care for her own children, as well as work as a home provider for other children. *Id.* She claimed that she was unable to sleep, had low energy, low motivation, and a low appetite with some recent weight loss. *Id.* She also pointed out that over the past four or five months she had felt that her energy overall had declined due primarily to the fact that her husband had an affair in October of 2002. *Id.* Additionally, in November of 2002, her husband was charged in two separate instances of Driving While Under the Influence. R. 22.

Before Plaintiff was admitted to the hospital, she stated that her primary care physician, Dr. Smith had placed her on Paxil 25 mg and Zyprexa 5 mg. R. 19. Ultimately, Plaintiff was diagnosed with major depressive disorder and her treatment plan consisted of both individual and

group psychotherapy. *Id.* Plaintiff began therapy on March 11, 2003 with Dr. Lorraine Gahles-Kidlow. R. 20. Dr. Kidlow opined that despite some improvement with therapy and medication, Plaintiff was limited in her abilities to understand and remember, sustain concentration and persistence, and socially interact. *Id.*

On March 26, 2003, Plaintiff was under the care of Dr. Amy Shute of the Town Centre Family Care, P.A. R. 20. Plaintiff mentioned that her and her husband had been living in a house that was beyond their means financially. *Id*. She noted that she was losing sleep and not eating because money was tight and she feared that her family would run out of food. *Id.* She also mentioned that she had smoked 6 cigarettes a day and had 4 drinks per week. *Id.*

Additionally, Plaintiff had been actively abusing alcohol through May of 2004 and began attending AA meetings.[1] R. 15.  When Plaintiff went in for a follow-up visit, Dr. Shute noted an improvement in Plaintiff's symptoms and decided to adjust her medications to 10 mg of Zyprexa and 25 mg of Paxil CR. R. 20. She mentioned that Plaintiff had good eye contact, her speech was fluent, and that she was taking care of her children.[2] *Id.*

During another follow-up visit with Dr. Shute on June 17, 2003, Plaintiff mentioned that she had stopped taking Zyprexa in May and that she felt that she had more energy without it. R. 21. Plaintiff pointed out that she was getting out and doing what she needed to do, she was eating better, and was reading. *Id.* On July 17, 2003, plaintiff called her doctor and informed her that she was experiencing fatigue because of the Paxil and requested if she could decrease her dosage. *Id.* Dr. Shute agreed to lower her dosage, but a week later during her appointment Plaintiff told her doctor that she wanted to stop taking medications. *Id.*

---

[1] Plaintiff mentioned that she drank three glasses of wine a day, and during a two week period, she drank three shots of whiskey a night.
[2] Plaintiff was feeding her children, taking them to school and sporting events, and was roller blading for pleasure.

3

On July 18, 2003, Plaintiff underwent a mental status examination conducted by Dr. R. A. Farrell at the request of the Disability Determination Services ("DDS"). R. 21-22, 451-52. Dr. Farrell concluded that Plaintiff was sad but alert, oriented, and that her thought process was relevant. *Id.*  Additionally, he found mild restrictions to Plaintiff's activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. R. 212, 452. Furthermore, he noted that Plaintiff was able to maintain pace, persistence, and concentration for simple tasks. R. 218. Ultimately, he diagnosed her with bipolar disorder type II. *Id.*

On July 31, 2003, Plaintiff was evaluated for her depression by Dr. Joseph M. Rochford, based upon a referral from Dr. Shute. R. 22. After the exam, Dr. Rochford reported that Plaintiff's thought content was appropriate, her thought processes were logical, her speech, memory, and concentration were normal, but her judgment was impaired. *Id.* After the mental status exam, Dr. Rochford had Plaintiff evaluated at Princeton House Behavioral Services on August 28, 2003. R. 23. The examining psychiatrist (Dr. Steinbaum) opined that Plaintiff's thought processes were appropriate, her speech and perceptions were normal, she had no abnormal thought content, and had no problems performing her daily activities. *Id.* Moreover, he noted that Plaintiff spent her leisure time sleeping, cooking, working, riding bikes, and caring for her three children. *Id.*

In October of 2003, Plaintiff informed Dr. Rochford that she was no longer angry, less depressed, that she was selling her house at the end of the month and would be renting a house in Branchburg where she planned to look for a job. R. 24. On a follow up visit to Dr. Rochford in January of 2004, Plaintiff admitted that she was drinking because she was bothered with the lack of companionship by her husband. Ultimately, Dr. Rochford concluded that Plaintiff was stable and urged her to stop drinking. *Id.* In March of 2004, Plaintiff was looking for work in the school

system. *Id.* In September of 2004, Plaintiff was hospitalized at St. Francis Hospital for an alcohol induced mood disorder. *Id.*

In December 2005, Plaintiff began receiving treatment with Dr. Alicia Soskido. R. 451. Additionally, Dr. Kidlow submitted a second evaluation noting that plaintiff had no problems with her memory or social interactions. R. 452. However, she did find that Plaintiff's concentration and adaptation were impaired. *Id.* In October of 2006 Plaintiff had started a temporary job cleaning homes and caring for elderly people. R. 17. Plaintiff's work lasted only a month, as her reported earnings for the entire year were $504.00. *Id.* Plaintiff is currently the primary caregiver of her three children who are now 13, 16, and 18. R. 444. Furthermore, Plaintiff has a new boyfriend, regularly attends AA meetings, and serves as a sponsor for two recovering alcoholics. *Id.*

### III. STANDARD OF REVIEW

A reviewing court must uphold the final decision of the Commissioner if it is supported by "substantial evidence." 42 U.S.C. § 405(g); 1383(c)(3); *Morales v. Apfel*, 225 F.3d 310, 316 (3d. Cir. 2000). In order for evidence to be "substantial," it must be more than a "mere scintilla," *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938), but may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's decision was reasonable given the record before him. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

The reviewing court must review the evidence in its entirety. *Daring v. Heckler*, 727 F.2d 64, 70 (3d. Cir. 1984). As part of this review, the court "must take into account whatever in the record fairly detracts from its weight." *Schoenwolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir.

1988)). The Commissioner has an obligation to facilitate the court's review: when the record shows conflicting evidence, the Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). Additionally, the reviewing court is not empowered to weigh the evidence or substitute its conclusions for those of the fact finder. *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984).

### A. Establishing Disability

In order to be eligible for DIB benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423 (d)(1)(A).  The statute also requires that an individual will be determined to be under a disability only if her physical and mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

To determine disability, the Social Security regulations set up a five-step sequential evaluation process for the Commissioner to use. 20 C.F.R. § 404.1520. If a finding of disability or non-disability can be made at any point in the sequential analysis, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(b). At the first stage, the Commissioner must determine whether the claimant has engaged in any substantial gainful activity since the onset of the alleged disability. *Id.* If the claimant has not engaged in any substantial gainful activity, step two requires Commissioner to consider whether the claimant has a "severe impairment" or "combination of impairments" which significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant bears the burden of establishing the first

6

two requirements of the evaluation, and failure to satisfy either automatically results in a denial of benefits. *Bowen v. Yuckert,* 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies the first two steps, the third step requires that she provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d). Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits. *Id.* If the claimant does not have a listed impairment, the Commissioner will evaluate and make a finding about claimant's Residual Functioning Capacity (RFC). 20 C.F.R. § 404.1520(a)(4), (e).  If she cannot provide such evidence, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's RFC permits her to perform past relevant work. 20 C.F.R. § 404.1520(e). A claimant's RFC is defined as the level at "which an individual is still able to do despite the limitations caused by his or her impairments." *Id.* If the plaintiff is found to be capable of returning to her previous line of work, then she is not disabled and therefore not entitled to disability benefits. *Id.*

Conversely, if the plaintiff is unable to perform the work of her previous job, the final step requires the Commissioner to consider the RFC along with the plaintiff's age, education, and past work experience to determine if she can do other work in the national economy. 20 C.F.R. § 404.1520(g). The burden shifts to the Commissioner to demonstrate that the plaintiff can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the plaintiff is entitled to and will receive Social Security benefits. *Yuckert,* 482 U.S. at 146-47 n.5.

### B. Objective Medical Evidence

Under Title II of the Social Security Act, a plaintiff is required to provide objective medical evidence in order to prove her disability. 42 U.S.C. § 423(d)(5)(A). Moreover, a plaintiff

cannot prove that she is disabled based exclusively on her subjective symptoms. *Green v. Schweiker,* 749 F.2d 1066, 1069-70 (3d. Cir. 1984). Subjective complaints of pain, without more, do not in themselves constitute disability. *Id.* In order for the plaintiff to be awarded benefits, she must provide medical findings that show that she has a medically determinable impairment. 42. U.S.C. § 423(d)(1)(A).

### IV. THE ALJ'S DECISION

On November 17, 2010, a hearing was held before ALJ Donna Krappa in Newark, New Jersey, at which Plaintiff testified. R. 691. On September 9, 2011, another hearing was held before the ALJ, where Plaintiff's attorney and vocational expert Steven Feinstein testified. *Id*. In a written opinion dated March 28, 2012, the ALJ denied Plaintiff's claim for DIB, concluding that she was not disabled at any time from February 9, 2003, the alleged onset date, through December 31, 2003, the date last insured. R. 455.

After looking over all of the evidence in the record, the ALJ concluded that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2006. R. 445. The ALJ then proceeded to the five-step sequential analysis pursuant to 20 C.F.R. § 404.1520. *Id.* At step one of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 9, 2003 and December 31, 2003. R. 447. During step two, she determined that Plaintiff had severe impairments consisting of an affective disorder and alcohol abuse. *Id.*

With respect to step three, she concluded that Plaintiff did not have an impairment or combination of impairments that met or was equivalent in severity to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R 447. In order to satisfy this part of the evaluation, the Plaintiff's mental impairments must result in at least two of the following: marked restriction of daily activities; marked difficulties in maintaining social functioning;

difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation.[3] *Id.* Because the Plaintiff was the primary caretaker[4] for her three children during the period in question, the ALJ concluded that she had a mild restriction. *Id.* Moreover because she lived with, cared for, and regularly spent time with her children, the ALJ found Plaintiff to have mild difficulties. R. 448. Finally, regarding her concentration, pace, and persistence, the ALJ concluded that she had moderate difficulties which were due primarily to the fact that she was continuously drinking alcohol during the period in question. *Id.* Also, the Plaintiff had not experienced any episodes of decompensation, which are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. *Id.*

Before reaching step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with non-exertional limitations to unskilled, repetitive, low-stress, work requiring only occasional contact with coworkers and supervisors, and no contact with the general public. R. 449. The ALJ made this finding, after taking into consideration all of the medical source opinions in the record. R. 451-52. The ALJ also based her determination on the Plaintiff's own testimony. R. 451. The Plaintiff testified that during the period in question she was partaking in several daily activities, which included caring for her three children, running errands, attending and serving as a sponsor at AA meetings, riding a bike for exercise and spending time with her friends and family. *Id.* Moreover, the ALJ based his conclusion on the testimony of the vocational expert, Steven Feinsten, who

---

[3] A marked limitation is considered to be more than moderate but less than extreme.
[4] During the period in question, Plaintiff cooked, shopped, drove them to school and sports, and took care of all of their respective needs.

stated that Plaintiff was unable to perform her past relevant work in childcare because of the skill level and contact with others that was required. R. 453.

Because the Plaintiff was unable to perform her past relevant work, the ALJ moved onto step five where she considers the Plaintiff's RFC along with her age, education, and work experience and determines if she can do other work in the national economy in conjunction with 20 C.F.R. Part 404 Subpart P, Appendix 2. R. 454. Based on all of the evidence in the record and the testimony of the vocational expert, the ALJ concluded that the Plaintiff was not disabled and was capable of making a successful adjustment to other work that existed in the national economy.[5] *Id.*

**V. DISCUSSION**

The Plaintiff contends in this Appeal that the ALJ's 2012 decision erred in two ways. First, she alleges that the ALJ's RFC determination was not supported by substantial evidence, because the ALJ incorrectly rejected and gave little weight to medical diagnoses and relied on the fact that she was the primary caretaker for her three children while determining her RFC. Second, the Plaintiff alleges that at step five, the ALJ unfavorably relied on the hypothetical that she posed to the vocational expert, instead of the hypothetical that Plaintiff's counsel introduced.

Plaintiff first argues that the ALJ erred in determining her RFC because she rejected several medical diagnoses. Specifically, she points out that the ALJ's calculation of the RFC was not supported by substantial evidence and that she incorrectly dismissed uncontradicted medical diagnoses and findings. (Pl.'s Br. 20).

As mentioned above, for evidence to be deemed "substantial," it must be more than a mere scintilla, *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938), but may be slightly less

---

[5] The vocational expert noted that Plaintiff was able to perform the requirements of the jobs of addressing clerk, dishwasher, and packager.

than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). In this case, the ALJ's decision and more specifically her RFC determination was supported by substantial evidence. The ALJ's determination took into consideration Plaintiff's 2003 hospitalization and the treating physician's decision to discharge her. Subsequently, the ALJ analyzed the treating physician's opinions after Plaintiff's discharge from the hospital. The ALJ's analysis included what the doctors had to say about Plaintiff's mood and how the Plaintiff described her daily activities, how she responded when asked about her husband's affair, and how she felt about her medication.

When going through the medical testimony, the ALJ gave little weight to Dr. Kidlow's 2003 evaluation because the doctor's assessment was contradicted by the record. If the ALJ concludes that certain testimony is not credible she must indicate the basis for that conclusion in the decision. *Cotter v. Harris*, 642. F.2d 700, 705-706 (3d. Cir. 1981). In her decision, the ALJ pointed out that Dr. Kidlow reported that Plaintiff had a severe impairment in her daily activities, while Plaintiff's own testimony regarding her daily activities contradicted the report as she was the primary caretaker and provider for her three children, attended AA meetings, and even rollerbladed and biked for pleasure. Moreover, the Third Circuit has made it clear that the ALJ is not bound by the opinion of a treating physician when determining the residual functional capacity. *Brown v. Astrue,* 649 F.3d 193, 197 n.2 (3d. Cir. 2011). Additionally, under 20 C.F.R. §404.1527(d)(2) if the medical opinion of a treating source is inconsistent with other substantial evidence in the record, the ALJ may weigh the evidence. Therefore, the ALJ did not err by placing little weight on Dr. Kidlow's assessment.

In addition to using the Plaintiff's own testimony to determine her RFC, the ALJ also factored in the opinion of the state agency medical consultant, R.A. Farrell, Ph. D. Dr. Farrell concluded that Plaintiff was able to maintain pace, persistence, and concentration for simple

tasks. Therefore, given the ALJ's consideration of medical and Plaintiff's own testimony there is substantial evidence to support her RFC determination.

Second, Plaintiff claims that the ALJ erred because she relied on the vocational expert's responses to her own hypotheticals as opposed to hypotheticals posed by Plaintiff and counsel in determining that she could perform other work in the national economy.  During step five of the sequential analysis, the ALJ is to consider the Plaintiff's RFC along with her age, education, and past work experience to determine if she can do other work in the national economy. 20 C.F.R. § 404.1520(g). Here, the ALJ aided by the testimony of a vocational expert concluded that given the Plaintiff's RFC and vocational factors, there was other work in the national economy that she could still perform. Under 20 C.F.R. § 404.1566, a vocational expert may be used to provide reliable evidence regarding the existence of jobs in the national economy that a claimant with specific functional limitations can perform.

In this case, because the ALJ found that the Plaintiff could not remain in her previous area of work, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with Plaintiff's RFC, age, education, and previous work experience. The ALJ relied on the vocational expert's testimony that Plaintiff would have been able to work as an addressing clerk, dishwasher, or packager. The Plaintiff claims that the ALJ erred because she only considered the vocational expert's response to her question. Instead, the Plaintiff asserts that the ALJ should have determined her ability to work based upon the vocational expert's answers to her hypotheticals which were reliant upon alternative RFC's and limitations recorded by her treating physicians. This argument lacks merit because Plaintiff's objection is an attack on the RFC, which as noted before was supported by substantial evidence in the record. The Third Circuit states that the ALJ must only present hypotheticals that accurately portray the claimant's credibly established limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Here,

12

the ALJ did just that as her hypothetical to the vocational expert was based on the Plaintiff's determined RFC.

### VI. CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision denying Plaintiff DIB benefits. Therefore, the Court affirms the final decision of the Commissioner. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: August 7, 2013

13